## ABBOTT *et al. v.* NATIONAL S. S. Co.[1]

*(District Court, S. D. New York. January 31, 1888.)*

1. SHIPPING—SHORTAGE—BILL OF LADING.
   Where a bill of lading declares, in effect, that the ship or the owners are not to be held responsible for numbers or weight, they cannot be held liable for shortage, without further proof than the statements of the bill of lading as to the actual amount delivered by the shipper. This rule applies both to actions *in rem* and *in personam.*

2. SAME.
   The evidence showing satisfactorily that respondent's steam-ship had delivered all the bars of iron which had been loaded upon her, and on which a shortage was claimed by reason of the statement in the bill of lading of the number shipped, *held,* that respondent was not liable.

3. SAME—BILL OF LADING—CONSTRUCTION OF TERMS.
   The term "131 bars short shipped," used in a bill of lading, construed to mean so many less than the number previously stated.

In Admiralty.
*Hamilton R. Squier,* for libelants.
*John Chetwood,* for respondent.

BROWN, J: The libelant sues to recover an alleged shortage of 64 bars of iron in a consignment brought from London to New York on board the respondent's steamer Denmark, in September, 1881. The bill of lading provides for a delivery of iron in the following form: "4,264 bars

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

of iron, 131 bars short shipped." The bill of lading, among other exceptions from liability, includes the following: "Not accountable for weight, contents, value, length, measure, quantities, or condition." The bill of lading in the margin stated the weight to be 74 tons, 17 cwt., 1 qr. Upon delivery at New York the number of bars was found to be 61 less than 4,264, but the weight was 74 tons, 18 cwt., 1 qr., 4 lbs., or 116 pounds in excess of that stated in the bill of lading.

The only evidence in regard to the meaning of the words "131 bars short shipped" that was given upon the trial is to the effect that this was a deduction to be made from the number 4,264 previously stated. Upon this explanation of the bill of lading, there would be an excess in the number of bars delivered over the number received of 70 bars. The evidence leaves no doubt that all the iron that was put on board the steamer was delivered in New York. It is not certain, however, that all that was delivered to the respondents in London was loaded upon the steamer, or was forwarded. But the libelant has given no proof of the actual number of bars, or of the weight, delivered to the respondents in London, except the bill of lading itself; and when the bill of lading, whatever the precise language, declares, in effect, that the ship or the owners are not to be responsible for the number or weight stated, neither the ship nor the owners can be held for alleged shortage without satisfactory proof of the actual amount delivered. Such exceptions rebut the presumption of the correctness of the number or weight stated in the bill of lading. The number and weight are often taken from the mere statement of the shippers, without verification by the ship. Such exceptions are notice of that fact, and that there is no responsibility for the amounts stated, except upon the further proof of what was delivered. This has been frequently applied in actions *in rem*, and is manifestly applicable equally to actions *in personam*. *The Ismaele*, 14 Fed. Rep. 491, 22 Fed. Rep. 559; *Matthiessen* v. *Gusi*, 29 Fed. Rep. 794; *The Tangier*, 32 Fed. Rep. 230; *Eaton* v. *Neumark*, ante, 891.

In the present case it would seem, from the weight stated in the margin of the bill of lading, that the full amount intended to be acknowledged by the bill of lading was delivered; since the full weight there stated was delivered, and somewhat more, as is proved by the custom-house weight. The libel must, therefore, be dismissed, with costs.